Good morning. Kara Hartzler for Mr. Rodriguez-Frias for Federal Defenders. The district court here made two sentencing errors. It relied on a prior burglary conviction to impose an eight-level enhancement, which violates the Supreme Court's recent decision in DECOM, and it functionally rejected the prosecutor's fast-track departure. I'd like to begin with this Court's request to discuss our DECAMP argument in light of Rodriguez-Castillon, Sandoval-Orellano, and Barragan-Lopez. This Court is bound by DECAMP rather than those three cases for three reasons. First of all, DECAMP was not discussed in any of those cases. In fact, Sandoval and Barragan came out before DECAMP was issued, and Rodriguez-Castillon only mentions DECAMP twice in passing and doesn't talk about it in any context relating to the ordinary case. So there's just no way to take those three authorities and say that they made any kind of authoritative statement on DECAMP's applicability here. Well, let me ask you this, counsel. Those three were all decided after DECAMP, right? No, Your Honor. In fact, my — But one of them was. One of them was. One of them was, Your Honor. Barragan and Sandoval were decided before. Okay. All right. So let's take that one. All right. What — that was decided after DECAMP. Correct. It's aware of DECAMP. It is interpreting DECAMP. In what way was it in error? Well, Your Honor, first of all, DECAMP never came up in that case in the context of the ordinary case, so we really don't believe that it's any sort of interpretation of DECAMP. But if this Court disagrees with that, one of the things that we would point out is that this case deals with a statute that's fundamentally different than the statute at issue in Rodriguez-Castillon. And I'll explain why. The James Ordinary Case Standard is just another way, fundamentally, of stating the Duenas-Alvarez realistic probability test. Both of those were designed to do the same thing. They wanted to take these far-fetched hypotheticals out of the equation. They wanted people to not be able to say, oh, well, if I point a gun that has no bullets, then it's not a crime of violence. Now, in Rodriguez-Castillon, and the other two cases as well, the courts there never found there was a case that posed a realistic probability. They never pointed to any case saying, this case shows that, in fact, you know, there's something grounded in case law, but we're just going to reject that. By contrast, in our case with the burglary, this Court has noted numerous times that if you have a lawful entry into a house, there is no risk of force. So if the Court disagrees and believes that DeCompte, in fact, was interpreted by Rodriguez-Castillon, we can still distinguish that. Because the burglary statute here, there is no, or I'm sorry, there is a realistic probability that it could be violated without a substantial risk of force. Whereas in Rodriguez-Castillon, the Court said over and over, we don't think there's any case where, in that situation, an older adult could have some sort of lewd and lascivious contact with a 14- or 15-year-old, and there would not be a substantial risk. That's the threshold question, because the record's a little bit muddy, I think, on this point about the prior conviction in this case. The pre-sentence report that he was convicted of first, and I think the transcript shows that the judge thought this was a first-degree residential burglary. Is that right? That's correct, Your Honor. Okay. Thank you. That's correct. The third thing that I would like to bring to this Court's attention is, if this Court disagrees with everything I've said so far, and believes that, absolutely, we can't distinguish this, we still believe that, ultimately, this Court is bound by DeCompte, rather than the three cases that this Court raised. And the reason is this. This Court has said in Osbendie-Woodward that if a subsequent three-judge panel decision is inconsistent with higher authority, we are, of course, bound by the higher authority. Right. But, you know, we invoke that doctrine when it's awfully clear. Otherwise, we rely on our en banc process. So it's a – certainly we have the power under appropriate circumstance to do it, but I would say we do it very, very carefully, because essentially you're overruling another panel without invoking the en banc process. Given the procedural posture in this case, where this issue is raised for the first time on appeal, why should we do that? Well, Your Honor, first of all, I would point this Court to the First Circuit's decision in Fish, which I recently did a 28-J on. And I think that that provides the exact answer to the question that you're answering. In that case, the First Circuit acknowledged that, well, DeCompte, you know, this was a different situation. And, in fact, the First Circuit in a prior case had held that that exact Massachusetts assault and battery statute was, in fact, a crime of violence under a risk-based analysis. And then after DeCompte came out, Fish did a complete 180, and they said we can no longer do that. We don't even have to go en banc. We have to follow DeCompte. And the reason they said that is because if, after DeCompte, we ignore actual cases showing the absence of risk, this would wipe out the categorical approach and directly reject DeCompte. So Fish is a very good example of why this Court should do exactly what you're asking here. Let's talk about the procedural posture of this case, because this issue was not raised below. Of course, DeCompte was not issued, not available. That's correct. But there's something else here, because your client actually requested this, or appeared to request it. So there is some force to the government's argument about invited error. It's hard to tell the district court that the district court was in error when this issue wasn't presented. So why don't you talk about the procedural posture and how it affects this issue on appeal? Absolutely. As Your Honor mentioned, DeCompte wasn't issued at the time. And because our entire issue, our entire argument on this really hinges on DeCompte, we understand that you don't want to tell the district court you did something wrong. But the fact is the district court didn't have the authoritative case law in front of it at the time. Now, there's one other point that I would bring up. Okay. Before you go on on that, why can't you raise this via the vehicle of a 2255 motion? It is possible, Your Honor. And to be honest, I — Wouldn't that be the more appropriate way to deal with this, given the fact that the district court hasn't passed on this argument in the first instance? No, Your Honor. And to that, I would point to this Court's decision in Gonzales-Aparicio, which said that the court can consider an issue, and doesn't even have to consider it under plain error, if it's a pure question of law and it would not prejudice the government. Now, here, that's the exact situation we have. Because this is a pure question of law. This doesn't involve even an analysis under the modified categorical approach. It's a pure question of law that this Court has been considering for 20 years. And so there was nothing that needed to happen in front of the district court. And in fact, because it's a pure question of law, everything can be decided at this level. The government, in their answering brief, devoted 14 pages to this argument. There's no prejudice to the government that was caused by not raising this issue before the district court. I'd be interested in a slightly different aspect of this. The question we have to deal with is whether DECOMP is clearly irreconcilable with our prior holdings. DECOMP went off on 16A. But these cases that we asked you to look at, admittedly, double-checking found, of course, only one was actually issued after DECOMP. But they deal with 16B. And 16B is a crime of violence via the, in quotes, ordinary case approach described in Ramos Medina. Why is that, the 16B setting, controlled by DECOMP, which is a 16A situation? Because, Your Honor, in James, the Court said that we use the categorical approach for the ordinary case. So we don't have two categorical approaches, one for 16B and one for 16A. We just have one categorical approach. And because DECOMP fundamentally and revolutionarily redefined the categorical approach for all of us, it means that that same interpretation applies to 16B, which similarly uses the categorical approach. I would also point this Court to another decision or another line from the Fish case in the First Circuit. They said, though it's theoretically possible to read DECOMP as having no application to the ordinary case, it was unlikely that DECOMP would go to all the trouble of clarifying this very complicated categorical approach, only to have its holding not apply in the 16B context. But there is a footnote in DECOMP. I think it's footnote 6, isn't it, that says that we're not going to talk about because the government had waived any discussion of the residual cost. That's correct. And frankly, the Supreme Court couldn't discuss it at that point because under Supreme Court Rule 14, I understand the Supreme Court can do whatever it wants. Yes. But under Supreme Court 14, Justice Scalia has said in other cases that we can only consider what's part of the question presented. And this ordinary case analysis was not presented. Well, perhaps. But to Judge Smith's point, there is this footnote that sort of begs the question about the applicability of DECOMP to a 16B analysis, isn't there? Yes. I agree. Yes, there is this footnote. Your Honor. Plus, it's clear the Supreme Court is enamored of the Ninth Circuit's jurisprudence on this point. And they wanted to give us some thoughts. Yes. But they were 16A cases, right? That's right. And, you know, I think, honestly, if this Court doesn't consider this issue in the 16B context, it's essentially setting itself up for DECOMP 2. And I would also just point to the fact of what consequence is that? I will just conclude, Your Honor, by saying that... What's that expression about the messengers? I would just conclude, Your Honor, by saying that since DECOMP, there have been at least four circuits that came out and applied DECOMP to this ordinary case analysis. So what we're saying is that it can't be that radical an idea if at least four other circuits are doing it. I'll conclude there for the moment.  I've seen that every now and then. Thank you, Your Honor. Good morning, Your Honors. And may it please the Court, Mark Rahe for the United States. The issue of the eight-level sentencing enhancement here is extremely narrow. As this Court knows, we're not looking at this on a blank slate. There's not one, not two, not three, but four separate binding cases from this Court. Becker, Ramos, Medina, Lopez, Cardona, and Kwong have all held that 459 of the California Penal Code is a categorical crime of violence for purposes of the plus-eight definition. The only way this Court can ignore those four cases is to apply the clearly reconcilable test with respect to DECOMP. The government's points on why DECOMP is not clearly reconcilable with this line of authority are few and short. First of all, DECOMP did not even involve the pure categorical approach. The focus of that case was the modified categorical approach. And now this Court sees the revolution that that has had. When one looks to the issue there, even at 133 Supreme Court, at 2283, we granted certiorari to resolve a circuit split on whether the modified categorical approach applies to statutes like 459, and we hold that it does not. Becker and Progeny all found that 459 satisfied the 16B definition categorically. So first of all, that's a different issue. Is that because it's a residential burglary, a first-degree burglary? Yes. Thank you. That's precisely it. In addition, as is evident from DECOMP itself, and I believe Justice Smith was sort of referring to this as the 16A side of the equation, the Court there in Supreme Court was not at all concerned with the residual clause definition of crime of violence. As Judge Kirsten pointed out in footnote 6, they expressly reserved the concern about it, but it didn't reach it. I'm concerned about it. But that's okay. But it's an open question, isn't it? Doesn't that footnote sort of beg the question? That is a concerning footnote. Well, I would say that certainly it's an open question, and therefore under the narrow jurisprudence that governs clear reconcilability, the government has to win. We cite a case, United States v. Dunn. I believe it was authored by Judge Smith. It says this clearly irreconcilable test is a difficult threshold. It's not enough to just say that there's now tension or that intervening Supreme Court authority casts doubt. And it's ironic, because at page 12 of the opening brief, my opponent actually says that these, DECOMP at most, casts doubt. So again, who knows what the future holds? Who knows what will happen when this case gets to the Supreme Court? But wouldn't you say that the wind is blowing the other way on this issue? I mean, DECOMP has started something. And if you look at the issue carefully, it's pretty hard to see how it doesn't apply to 16B. I disagree, Your Honor, because there the only thing the court was looking at was generic burglary. By definition, I mean, this substantial risk test is a whole different animal. It doesn't have to be present in every case. In fact, that's another reason why this isn't clearly reconcilable. James says when you apply a residual clause, risk-based definition of crime of ordinary case. DECOMP never even cites James. And the term ordinary case isn't even present in there. So it's another reason why it's not clear. I agree with you that DECOMP didn't reach that issue. But the logic of 16A, I think, may well have some considerable force in looking at 16B. I mean, 16A says has to have as an element. 16B is already different. It says a felony by its nature. I mean, to me, I know it's a cliché term, apples and oranges. I used it in my brief. But for what it's worth, I continue to believe that that applies. I think there's just fundamentally different concerns that apply. To determine whether something has an element under 16A, in the end, is infinitely easier than determining something that's inherently probabilistic. I believe that's the term that the Supreme Court even used in James. And I know Justice Scalia in dissent in James said maybe there's unconstitutionality, vagueness. I mean, every year, this categorical stuff, I can't believe how much of my job it occupies. It seems to get up in front of the Supreme Court every year. So, you know, who knows what will happen. But... But is that why it matters that it's a residential burglary? Because we're looking at the ordinary case. We're looking at the risk of force and the likelihood of force. Is that what you're saying? Yes, I am, Your Honor. Because if I trace it back to Becker, which was the very first one on this, it says, when you come into the home, the sanctity of the home, there's just something different about that. And we saw people versus Rodriguez that were... In terms of the risk of harm, the risk of force against a person or property because it's residential. This is... Even though the statute, forgive me for interrupting, but even though the statute still has the same problem as 459 generally, which is unauthorized entry, that is an absent element. Correct. Okay. But that's still your argument. All right. That's what... Your case would be a lot easier if California statute didn't also include the fact of lawful entry. Because you'd have to concede that when somebody enters the property lawfully, then the probabilistic risk goes down. I wouldn't concede that, Your Honor, but I still believe the situation. I agree. If California had the unlawful entry or breaking and entering, sure, we would have a stronger case. But... Counsel, under Miller versus Gamme, would this three-judge panel have the same problem? These cases we cited in our order, since the comp specifically refers to 16A and we're talking here about 16B. I'd say no. Because in order... You know, Miller versus Gamme, I believe it's the same thing. It says one three-judge panel is bound by prior three-judge panels unless there's an intervening en banc or Supreme Court that's clearly reconcilable. And how can it be clearly reconcilable when you're not even applying the same definition? So the government would say coming out of the gate. I mean, obviously... And would that be true even if the wind is indeed blowing in the way my colleague refers to? Is that something to come up in the future? If we had a question about it, would we be better off for us to ask for an en banc rehearing of this case where the court could, in fact, consider this a concern that it would overrule a three-judge panel? Well, I think that's always within the power of a panel to do, Your Honor. Our position is we would respectfully suggest that you don't make that call because... No, I get that. Yeah. So how do you deal with Fish? Do you just think Fish was wrongly decided? Yeah, no. Well, first of all, Fish, as I recall, the prior case they were talking about was under either ACCA or career offender. One of them was about the serious risk of physical injury, whereas 16B is about a substantial risk of the use of force. Not exactly the same definition. Now, there are times when the cases are applied persuasively to each other, but I think that's already a huge grounds of distinction with this case. In Becker, in the three cases that came after it, we were always talking about the 18 U.S.C. 16B definition. That's the definition at issue in this case. Fish being out of circuit, first of all, I mean, obviously I don't have to say it's persuasive, but for the clear reconcilability question, which, again, is the narrow issue in front of this Court, as Judge Smith pointed out in the Dunn case... The reason I ask that is that, obviously, if we issued an opinion in this case that conflicted with Fish, there would be an inter-circuit conflict, which we tried to avoid. Correct, but I would say maybe that ship has already sailed to the following extent. As I recall, Fish had some critical language with this Court's opinion from Meyer. So, you know, I don't think... I think the declaration maybe has already been made. But, again, since Fish was dealing with a different crime of violence definition and its disapproval of private circuit authority took place in that context, I don't see how that gives this Court power to suddenly disregard 20 years of precedent that's been consistent from Becker to Ramos, Medina to Lopez Cardona to Kwan. And I guess as a parting comment, this came up towards the end of my opponent's presentation. Yeah, the procedural posture here is a little special. I mean, this isn't just a case where the defendant stood silent below and then is trying to take advantage of an intervening case. They affirmatively represented that the plus 8 was accurate, not only in their they made that representation. Aren't they going to respond that any objection at that point would have been futile given the state of the law? Perhaps, but I don't know that futility is ever excused, something like that. In fact, all four cases that I talk about, Becker and Progeny, were all decided before this sentencing. In Lopez Cardona v. Holder, which was one of the cases that we cited in our sentencing summary chart, this Court, you know, addressed the same kind of argument that the defense is making now. It wouldn't have taken much for them to preserve that. But instead, you know, they asked for the plus 8. And my final comment being, I understand this Court always has discretion, you know, whether it's going to be wavered or plain error. We cite a doctrine of binding judicial admissions. I believe one of the cases is United States v. Benson. I've never seen any case that says a binding judicial admission gets excused because of prejudice. It goes to the integrity of the process. I can't say one thing. I can't say X in San Diego and then come up here nine months later and say not X. You know, I'm not aware of any exception to that. So this is definitely not the vehicle to overturn 20 years of precedent. Unless this Court has any further questions, the government would submit. Thank you, counsel. Thank you. We'll give you two minutes for a button. First, just in regards to the procedural issue that my opposing counsel ended with, I'd just like to point out that the Court has a responsibility to calculate the guidelines correctly. And so regardless of whether we messed up below or when the case came out, the bottom line is that at this point, we have to look at what are the correct guidelines calculations. And so that would be sort of our response. Your counsel, if I recall correctly, clearly couched its views in 3553A. And that's okay, is it not, if that's what happened? That is the way that it ended, Your Honor. Right. That's correct. I mean, you know, courts sometimes say things inartfully. We've even been known to do that. But the reality is if the Court, as it appeared to have done, couched everything in terms of 3553A, its concern about recidivism, seriousness, danger to the community, and so on, doesn't that undercut the argument that you're making? Well, Your Honor, in Munoz-Camarena, the Court held that even if the District Court said, I would give you the exact same sentence below, this Court still has to remand if the guidelines aren't correctly calculated. Right. I would just move on, Your Honor, next to opposing counsel's issue in regards to prior precedent. Now, what this Court has done in the past is it's essentially read the categorical approach out of the ordinary case analysis. It said, well, if you look at ten California burglaries and say six of them are unlawful entry, then that's the end of the equation. Now, what de Compte did that was so revolutionary is it basically said, by assuming facts, you are putting an element back into the statute that is not currently there. You're reinserting this missing element. And so if this Court holds that you can just look at what is the ordinary case and we think, well, most of them are probably unlawful entry, what the Court is essentially doing is reinserting that missing element back into the statute. It's presuming, it's going on facts that were not necessarily in the defendant's own case, but were in every other defendant's case who was convicted under California burglary. And when my opposing counsel talks about how de Compte was about the modified categorical approach, I would disagree. De Compte was about how, as I was just saying, you can't reinsert that missing element. And so because that is clearly irreconcilable with what this Court has done in its past precedent, we would ask the question. I thought that de Compte said that you can't rely upon certain fact finding by our Court using documents that were not proper to determine whether a person had been convicted of, in this case, 459. That's correct. But what de Compte said, and one of the key lines from de Compte is the key is elements, not facts. And if we look at the facts of every other California burglary case out there, you're doing the same thing that you were doing in de Compte. It's just you're doing it in everyone else's conviction rather than the defendant's. Well, but that's in terms of analyzing the statute, doesn't it? The Court was not happy with our fact finding by using extraneous documents in which there's no admission that contain the elements in the documents that were looked at by the prior fact. I don't read it nearly as broadly as you do, so I'm puzzled by that. It sounds like you're saying that automatically de Compte says, boy, everything here, if you don't have an exact categorical match, even though it's 16B, same thing applies when, in fact, in 16B context, we never did go into the review of the documents in the same way as the 16A category. Am I missing something? Well, in regards to your question about how, you know, in de Compte we can't look at the other documents in the record. How else are we to know that these other burglaries or that the ordinary case involves an unlawful entry except by looking at all the other documents in all the other cases? It's just that you're doing it on a macro level rather than an individual defendant's level. I get your pitch, but I have to say I don't think de Compte necessarily says what you say. It may turn out that way ultimately, but maybe not now. Thank you. Thank you, counsel. Thank you both for your arguments. The case has heard will be submitted for decision.
judges: Thomas, Smith, Christen